UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 24-cv-24991-BLOOM/Elfenbein**

DANIELLA DOS SANTOS VIEIRA,
RAMON GARCIA, DINA GARCIA, and
EMILY GARCIA,

      Plaintiffs,

v.

MSC CRUISES S.A., *a/k/a* MSC CRUISES
S.A. CO., *f/k/a* MSC CRUISES (USA) INC.,

      Defendant.

_____/

### OMNIBUS ORDER

**THIS CAUSE** is before the Court upon Plaintiff's Motion for Spoliation Sanctions and Negative Inference Instructions, ECF No. [60], Plaintiff Daniella Dos Santos Vieira's Motion to Strike and Preclude Defendant's Witnesses from Testifying at Trial and Offering Evidence Through Affidavit or Declaration in Any Pre-Trial Motion, ECF No. [59], Defendant's *Daubert* Motion to Strike Expert Testimony, ECF No. [64], and Defendant's Motion for Summary Judgment, ECF No. [65]. Plaintiff filed Responses in Opposition, ECF Nos. [84], [85]; Defendant filed Responses in Opposition, ECF Nos. [63], [79]; and both Parties filed Replies, ECF Nos. [76], [88], [90], [92].  The Court has reviewed the Motions, the supporting and opposing submissions, the record, and is otherwise fully advised. For the reasons that follow, Plaintiff's Motions, ECF Nos. [59] and [60], are denied, and Defendant's Motions, ECF Nos. [64] and [65], are granted.

### I.   BACKGROUND

On January 10, 2025, Plaintiffs filed their First Amended Complaint against Defendant, alleging they suffered injuries when a wholly unprovoked group of highly intoxicated passengers

("the Aden Family") physically assaulted and battered them while attending a "White Party" on the Defendant's Vessel. *See generally* ECF No. [5]. The Plaintiffs, other than Daniella Dos Santos Vieira ("Plaintiff"), settled their claims with Defendant. *See* ECF No. [56]. As a result, the First Amended Complaint's three remaining claims are: general negligence (Count I), negligent failure to warn (Count V), and premises liability (Count IX). *See generally* ECF No. [5].

In Count I, Plaintiff alleges that Defendant failed to promulgate and/or enforce adequate policies and procedures designed to prevent passengers aboard the Vessel from committing physical assaults against other passengers; failed to comply with the duties it assumed under the "Conduct Policy" to provide safety to guests; failed to prevent passengers from being overserved alcohol when clearly under the influence; and failed to adequately train and supervise individuals working aboard the Vessel who were responsible for supervising events hosted by Defendant that were represented to be safe.

Count V alleges that Defendant failed to warn Plaintiff of the prevalence and/or dangers of physical assaults aboard cruise ships.

Count IX alleges that Defendant owed Plaintiff a duty of reasonable care and a duty to warn her of concealed dangers, failed to provide adequate supervision and/or security aboard the Vessel, and failed to intervene when the assault took place *Id.*

## II.   UNDISPUTED FACTS

Defendant owns and operates the Vessel *MSC Seascape*. ECF No. [83] ¶ 1; ECF No. [91] ¶ 1. On May 28, 2024, Plaintiff Daniella Dos Santos Vieira ("Plaintiff") was a fare-paying passenger onboard the *MSC Seascape*. ECF No. [83] ¶ 10; ECF No. [91] ¶ 10. That evening, Defendant hosted a "White Party" in the Seascape Bar which holds 1,000 guest and was attended by at least 300-400 passengers. ECF No. [83] ¶ 11; ECF No. [91] ¶ 11. Plaintiff and her family arrived at the "White Party" around 9:00 p.m. and members of another family (the Aden Family)

arrived an hour later. ECF No. [83] ¶¶ 13, 14; ECF No. [91] ¶¶ 13, 14. The Aden Family were drinking shots of alcoholic drinks and encroached upon the space of other passengers. ECF No. [83] ¶¶ 16, 17; ECF No. [91] ¶¶ 16, 17.

Plaintiff Ramon Garcia ("Garcia") allowed members of the Aden Family to wear his hat multiple times and lost track of his hat. ECF No. [83] ¶¶ 23, 24; ECF No. [91] ¶¶ 23, 24. Garcia asked a member of the Aden Family to return his hat, but the individual told him he did not know where it was. ECF No. [83] ¶¶ 24, 25; ECF No. [91] ¶¶ 24, 25. At approximately midnight, one of the Aden Family members suddenly punched Garcia in the face. ECF No. [83] ¶¶ 26; ECF No. [91] ¶¶ 26. The other Aden Family members joined the attack, repeatedly punching and kicking Garcia. ECF No. [83] ¶ 28; ECF No. [91] ¶ 28.  Garcia lost his balance and fell to the ground where members of the Aden Family continued to repeatedly kick Garcia in the head and face, leaving him bloodied and bruised with a broken nose that required surgery. ECF No. [83] ¶ 29; ECF No. [91] ¶ 29.

Plaintiff's husband tried to intervene in the altercation to separate the Aden Family members from Garcia. ECF No. [83] ¶ 34; ECF No. [91] ¶ 34. Plaintiff then approached her husband and asked him not to get involved. ECF No. [83] ¶ 36; ECF No. [91] ¶ 36. Near the end of the altercation, one of the Aden Family members punched Plaintiff in the face, causing her to fall and break her left hand. ECF No. [83] ¶ 38; ECF No. [91] ¶ 38.

Plaintiff testified that she did not expect a fight was going to break out that night. ECF No. [64-1] at 40. Plaintiff did not feel as though there was tension in the air and at no point felt unsafe. *Id.*  Defendant's corporate representative testified that MSC security arrived on scene within 180 seconds of there being any evidence of a "brewing altercation". ECF No. [64-4] at 51. Plaintiff only disputes this testimony insofar as she argues the altercation began "brewing" when members

of the Aden Family began their drunk behavior at the bar and when the dispute about the return of the hat began. ECF No. [83] ¶ 7. Defendant's corporate representative declared that in the five years predating this incident, there have been no reported physical altercations during a "White Party" aboard the *MSC Seascape*. ECF No. [66-6].

## III.   LEGAL STANDARD

### A.  Spoliation

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009) (citation omitted). In certain circumstances, a party's "spoliation of critical evidence may warrant the imposition of sanctions." *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 945 (11th Cir. 2005). "Sanctions for spoliation may include '(1) dismissal of the case; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation of evidence which raises a presumption against the spoliator.'" *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184 (11th Cir. 2020) (quoting *Flury*, 427 F.3d at 945); *see also Morrison v. Veale*, No. 3:14-cv-1020-TFM, 2017 WL 372980, at *5 (M.D. Ala. Jan. 25, 2017).

Federal law governs the imposition of spoliation sanctions. *See Flury*, 427 F.3d at 944 (concluding that "federal law governs the imposition of sanctions for failure to preserve evidence"). Nonetheless, "the Court may look to state law for guidance to the extent that it is consistent with federal law." *Wilson v. Wal-Mart Stores, Inc.,* No. 5:07-cv-394-Oc-10GRJ, 2008 WL 4642596, at *2 (M.D. Fla. Oct. 17, 2008) (footnote omitted). Moreover, "[a] district court's power to sanction a party for spoliation of evidence derives from two sources: (1) the Federal Rules of Civil Procedure and (2) the court's inherent power to control the judicial process and litigation." *Sosa v. Carnival Corp.*, No. 18-20957-CIV, 2018 WL 6335178, at *8 (S.D. Fla. Dec.

4, 2018) (citing Fed. R. Civ. P. 37(e)), *reconsideration denied*, No. 18-20957-CIV, 2019 WL 330865 (S.D. Fla. Jan. 25, 2019); *see also Flury*, 427 F.3d at 944 (explaining that district courts have inherent power to impose sanctions for discovery abuses to "prevent unfair prejudice to litigants and to [ensure] the integrity of the discovery process").

Federal Rule of Civil Procedure 37(e) "address[es] the spoliation of electronically stored information [(ESI)]," *ML Healthcare Servs., LLC v. Publix Super Mkts., Inc.*, 881 F.3d 1293, 1307 (11th Cir. 2018), stating:

> **Failure to Preserve Electronically Stored Information**. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>> (A) presume that the lost information was unfavorable to the party;
>>
>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>
>> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

Ultimately, Rule 37(e) sets forth two categories of relief. First, "if a court finds prejudice to another party from the loss of ESI that 'should have been preserved in the anticipation or conduct of litigation,' then it may 'order measures no greater than necessary to cure the prejudice.'" *Nguyen v. Costco Wholesale Corp.*, No. 19-cv-80393, 2020 WL 413898, at *2 (S.D. Fla. Jan. 27, 2020) (quoting Fed. R. Civ. P. 37(e)(1)). Alternatively, "if the Court finds that the party that destroyed the ESI 'acted with the intent to deprive another party of the information's use in the

litigation,'" then the court can impose the harsher sanctions, based upon that bad faith spoliation, as set forth in subsection (2). *Id.* (quoting Fed. R. Civ. P. 37(e)(2)). At bottom, however, both of the categories of relief under Rule 37(e) "require that the preliminary four factors be established," *Hoover*, 2020 WL 4505634, at *8, and depend on "a finding that destruction of the evidence resulted in prejudice to the opposing party," *ML Healthcare Servs., LLC*, 881 F.3d at 1309.

### B. Expert Testimony

Federal Rule of Evidence 702 governs the admissibility of expert testimony. When a party proffers the testimony of an expert under Rule 702 of the Federal Rules of Evidence, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). To determine whether expert testimony or any report prepared by an expert may be admitted, the Court engages in a three-part inquiry, which includes whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). The Eleventh Circuit refers to each of these requirements as the "qualifications," "reliability," and "helpfulness" prongs. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). While some overlap exists among these requirements, the court must individually analyze each concept. *See id.*

Under *Daubert*, a district court must take on the role of gatekeeper, but this role "is not intended to supplant the adversary system or the role of the jury." *Quiet Tech. DC-8, Inc. v. Hurel Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (internal quotation marks and citations omitted). Consistent with this function, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). "[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech.*, 326 F.3d at 1341 (internal quotation marks and citations omitted). Thus, the district court cannot exclude an expert based on a belief that the expert lacks personal credibility. *Rink*, 400 F.3d at 1293, n.7. To the contrary, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596). "Thus, '[o]n cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility.'" *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988)). Ultimately, as noted, "a district court enjoys 'considerable leeway' in making" evidentiary determinations such as these. *Cook*, 402 F.3d at 1103 (quoting *Frazier*, 387 F.3d at 1258).

## C. Summary Judgment

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including, among other things, depositions, documents, affidavits, or declarations. See Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving

7

party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." Id. (quoting *Anderson*, 477 U.S. at 247-48).

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations, which 'are jury functions, not those of a judge.'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019) (quoting *Feliciano v. City of Mia. Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013)); see also *Crocker v. Beatty*, 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-movant's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant."). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

Initially, the moving party bears the "responsibility of informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986); see also *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs.*, LLC, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 322). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Yet, even where a non-movant neglects to submit any alleged material facts in dispute, a court must still be satisfied that the evidence in the record supports the uncontroverted material facts proposed by the movant before granting summary judgment. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave.*, Mia., Fla., 363 F.3d 1099, 1103 n.6 (11th Cir. 2004) *1319 ("One Piece of Real Prop."). Indeed, even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

In resolving the issues presented under Rule 56, "the court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied." *Carlin Commc'n, Inc.*, 802 F.2d at 1356. Moreover, summary judgment is inappropriate where the Court would be required to weigh conflicting renditions of material fact or determine witness credibility. *See Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993); *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("It is

not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment."); *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he [or she] is ruling on a motion for summary judgment or for a directed verdict." (quoting *Anderson*, 477 U.S. at 255)); see also *Ramirez v. Nicholas*, No. 13-60820-CIV, 2013 WL 5596114, at *4 (S.D. Fla. Oct. 11, 2013) ("The Court may not make the credibility determinations needed to resolve this conflict; only the jury may do so.").

## IV.    DISCUSSION

### A.  Plaintiff's Motion for Spoliation Sanctions and Negative Inference Instruction

In her Motion, Plaintiff contends Defendant maintains a comprehensive surveillance system and destroyed or otherwise discarded the video that captured the altercation at the "White Party". *Id*. at 3. Plaintiff asks the Court to exercise its authority under Federal Rule of Civil Procedure 37(e)(2) and to impose sanctions on Defendant. ECF No. [60] at 21. The sanctions Plaintiff proposes are:

> (a) An adverse inference instruction directing the jury that it must presume the destroyed video footage was unfavorable to Defendant and would have shown that Defendant had actual or constructive notice of the escalating danger posed by the [the Aden Family] and failed to intervene; (b) An order striking Defendant's affirmative defenses premised on lack of notice, as Defendant cannot be permitted to benefit from its own destruction of the evidence that would have established such notice; (c) An order precluding Defendant from arguing at trial that it lacked notice of the dangerous conditions leading to the assault; and (d) Such other and further relief as this Court deems just and appropriate under the circumstances.

*Id*. Plaintiff points out that she twice sent preservations letters to Defendant, just 10 and 22 days after the altercation. *See* ECF No. [60-7]. Moreover, the deposition testimony of MSC Cruises S.A.'s corporate representative revealed that surveillance footage is overwritten after 30 days. ECF No. [60-6] at 52. Plaintiff argues Defendant failed to preserve surveillance footage of the

altercation in contradiction of their own policies, which requires CCTV operators, and the Chief of Security and Deputy Chief of Security, under direction of the SSO, to preserve images related to Security and Safety Incidents, downloading recorded images when specifically directed to do so, and maintaining the chain of custody for downloaded images secured by the vessels for evidential purposes. ECF No. [60-11] at 3.

Plaintiff further argues Defendant's duty to preserve the surveillance video was triggered by Defendant's staff witnessing the assault, Defendant's personnel conducted interviews and prepared incident reports in the days following the incident, Defendant knew that passengers had contacted the Miami-Dade Police Department to report the incident, Defendant's own internal policies, Plaintiff's preservation letters, and Defendant's retained related documents and a small portion of the video surveillance. ECF No. [60] at 10. Plaintiff also contends that Defendant was subject to mandatory video surveillance retention requirements under the Cruise Vessel Security and Safety Act of 2010 ("CVSSA"). *Id*. at 11 (citing 46 U.S.C. § 3507).

Defendant responds that, following the May 28, 2024 incident, the Mano Security CCTV operator aboard the *MSC Seascape* located relevant videos and provided a copy to law enforcement officers. ECF No. [79] at 6-7. Defendant further responds that law enforcement officers were given the opportunity to view the incident scene and request additional footage. *Id*. at 7. As to the preservation letters, Defendant points out that Plaintiff's counsel sent the letters to MSC Cruises (USA) Inc., a Delaware company that does not own or operate the *MSC Seascape*. Plaintiff never sent a preservation letter to the entity or address listed in the Passage Contract as the appropriate entity to receive all legal notices. Defendant also points out that Plaintiff's June 9, 2024 letter references a vessel named "Sea Escape" which MSC does not own or operate. *Id*. at 8.

11

Defendant argues Plaintiff cannot establish the elements required for spoliation sanctions under Rule 37(e) because Mano Security, not Defendant, exercised control over the onboard CCTV systems. *Id*. at 9. Defendant further argues that Mano Security preserved more than three times the footage recommended by Defendant's policy and included the entire Vieira altercation. *Id*. at 10. Defendant contends Plaintiff's reliance on the CVSSA is misplaced because Plaintiff's injuries were not within the CVSSA's statutory definition of serious bodily harm nor does the footage provide evidence of a sexual assault incident, as required by 46 U.S.C. § 3507. *Id*. at 15.

To impose spoliation sanctions on a party pursuant to Rule 37(e) when electronically stored information (ESI) has not been preserved, the Court must ensure that four requirements are met: "(1) the information sought constitutes ESI; (2) the ESI should have been preserved in anticipation of litigation; (3) the ESI is lost because a party failed to take reasonable steps to preserve it; and (4) the ESI cannot be restored or replaced through additional discovery." *Reed v. Royal Caribbean Cruises, Ltd.*, No. 19-24668-CIV, 2020 WL 5878814, at *3 (S.D. Fla. Oct. 2, 2020) (quoting *Title Cap. Mgmt., LLC v. Progress Residential, LLC*, No. 16-21882-CIV, 2017 WL 5953428, at *3 (S.D. Fla. Sept. 29, 2017)). The Court addresses each Rule 37(e) requirement.

The Court first addresses whether the CCTV footage in this case constitutes ESI, implicating Rule 37(e). *See Romero v. Regions Fin. Corp.*, No. 18-22126-CIV, 2019 WL 2866498, at *4 (S.D. Fla. July 3, 2019) ("Rule 37(e)—and not the Court's inherent powers to control its docket—provide the exclusive mechanism by which we must analyze spoliation allegations involving ESI." (citing *Living Color Enters., Inc.*, 2016 WL 1105297, at *4; *Wooden v. Barringer*, No. 3:16-cv-446-MCR-GRJ, 2017 WL 5140518, at *3-4 (N.D. Fla. Nov. 6, 2017); *Ala. Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 740 (N.D. Ala. 2017))). The Parties agree that the CCTV footage is ESI governed by Rule 37(e), and the Court's

independent review supports that Rule 37(e) is the exclusive avenue to address the arguments regarding spoliation of the CCTV video.

Next, the Court turns to whether the CCTV footage is the type of ESI that Defendant should have preserved. "Once a party reasonably anticipates litigation, it has an obligation to make a conscientious effort to preserve electronically stored information that would be relevant to the dispute." *U.S. ex rel. King v. DSE, Inc.*, No. 8:08-cv-2416-T-23EAJ, 2013 WL 610531, at *7 (M.D. Fla. Jan. 17, 2013), report and recommendation adopted, No. 8:08-cv-2416-T-23EAJ, 2013 WL 608541 (M.D. Fla. Jan. 15, 2014); *see also Nguyen*, 2020 WL 413898, at *2; *Long v. Celebrity Cruises, Inc.*, No. 12-22807-CIV, 2013 WL 12092088, at *5 (S.D. Fla. July 31, 2013). "In determining whether litigation is reasonably foreseeable, 'the standard is an objective one.'" *Title Cap. Mgmt., LLC*, 2017 WL 5953428, at *4 (quoting *Ala. Aircraft Indus., Inc.*, 319 F.R.D. at 742). The Parties do not dispute that litigation was foreseeable in this case.

"Even assuming Defendant did have a duty to preserve the allegedly spoliated video ..., sanctions would still not be warranted unless the allegedly spoliated ESI was lost because Defendant failed to take reasonable steps to preserve it." *Nguyen*, 2020 WL 413898, at *3. Here, Defendant did take reasonable steps to preserve the relevant ESI surrounding Plaintiff's injury. As can be seen in CCTV camera footage, Defendant preserved footage moments before, during, and after the physical altercation in this case. The entirety of the physical altercation involving Plaintiff Vieira is visible on CCTV footage. ECF No. [60-8]. The record evidence supports that the CCTV system and security operation were managed by independent third-party, Mano Security. ECF No. [81-4] at 6. The Chief Security Officer , a Mano Security employee, directed the CCTV operators to manually review the CCTV video and save the relevant portions. ECF No. [81-6] ¶ 11. Here,

Defendant preserved over six minutes of footage, despite their policy requiring that just two minutes be preserved. *Id*. ¶¶ 13, 16.

"Defendant's failure to preserve all relevant ESI is not fatal where it has undertaken reasonable steps and adequately preserved the most pertinent CCTV footage—i.e., that of Plaintiff's incident." *Easterwood v. Carnival Corp.*, No. 19-CV-22932, 2020 WL 6781742, at *8 (S.D. Fla. Nov. 18, 2020) (citing *Reed v. Royal Caribbean Cruises, Ltd.*, No. 19-24668-CIV, 2020 WL 5878814, at *9). While Plaintiff may have liked more footage to be preserved, particularly in light her allegation that members of the Aden Family were intoxicated, the Court does not find that the Defendant had a duty to preserve additional CCTV footage under the totality of the circumstances here. Rule 37(e) recognizes that reasonable steps to preserve suffice; it does not call for perfection.

The Court turns to Rule 37(e)'s requirement that the spoliated evidence "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e); *see AXIS Ins. Co. v. Terry*, No. 2:16-cv-01021-JHE, 2018 WL 9943825, at *7 (N.D. Ala. Apr. 23, 2018). The Parties appear to agree that the missing portions of the CCTV footage cannot be restored or replaced. However, as the Defendant took reasonable steps to preserve the ESI, the Motion must be denied. *See Reed*, 2020 WL 5878814, at *9; *Living Color Enters., Inc.*, 2016 WL 1105297, at *5 ("If the answer to any of questions 1-3 is 'no', then the Court need proceed no further under Rule 37(e), and a motion for spoliation sanctions or curative measures must be denied.").

The Court finds similarly unavailing Plaintiff's argument that more CCTV footage should have been preserved in accordance with the CVSSA. The CVSSA provides that:

> **(B) Civil actions.** -- Except as proscribed by law enforcement authorities or court order, the owner of a vessel to which this section applies shall, upon written request, provide to any individual or the individual's legal representative a copy of all records of video surveillance--

14

**(i)** in which the individual is a subject of the video surveillance; and
**(ii)** that may provide evidence of any sexual assault incident in a civil action.

46 U.S.C. § 3507(b)(3)(B).

Here, Plaintiff acknowledges that she was not subject to sexual assault. Alternatively, the requirements of the CVSSA depend upon whether Defendant knew at the time that Plaintiff had suffered "an assault with serious bodily injury". *See Brown v. NCL (Bahamas), Ltd.*, 155 F. Supp. 3d 1335, 1342 (S.D. Fla. 2015). Plaintiff provided a statement to Defendant the day after the fight that an individual punched her on the right side of her face and that she "injured her left hand very badly." ECF No. [83-5]. She further indicates that she declined medical treatment because she did not want to pay a $180 fee. *Id*. Plaintiff testified that her hand was "swollen", and Defendant then offered to cover the charges for an x-ray. ECF No. [65-1] at 66. Plaintiff testified that Defendant put her hand in a half-hard cast. *Id*. Plaintiff did not see an orthopedic surgeon until after she disembarked the *MSC Seascape*. *Id*. Moreover, now dismissed Plaintiff Garcia gave a statement indicating he was punched and hit in the face, but also refused medical treatment because he did not want to pay a medical fee. ECF No. [83-4]. Additionally, when the *MSC Seascape* returned to Miami, the police came to the ship and authored a report concerning the incident. ECF No. [64-4] at 57-59. The report indicates officers contacted Garcia who told them he was punched and sustained several bruises on his face and forearm. ECF No. [83-13]. It is not clear whether the police spoke with Plaintiff, but the report indicates she was punched and sustained an injury to her left hand. Members of the Aden Family were charged with misdemeanor assault and battery. Based on those facts, the Court finds no evidence exists that Defendant knew at the time that Plaintiff suffered a "serious bodily injury". As such, the CVSSA does not apply, and the Motion is denied.

Case No. 24-cv-24991-BLOOM/Elfenbein

**B. Plaintiff's Motion to Strike and Preclude Defendant's Witnesses from Testifying at Trial and Offering Evidence Through Affidavit or Declaration in any Pre-Trial Motion**

In her Motion, Plaintiff argues Chief Security Officer Vasilejos Pappas and Officer Michelle Garuccio should be precluded from testifying because Defendant failed to produce them for deposition. ECF No. [59] at 7. Plaintiff argues Defendant undertook the responsibility to produce those employees, but did not do so and, following Defendant's representations, Plaintiff did not "unilaterally schedule them". *Id*. Plaintiff also seeks to exclude "late disclosed witnesses" that Defendant provided to Plaintiff on January 15, 2026, prior to the close of discovery. *Id*. at 10. Plaintiff contends those disclosures violate Defendant's obligations under both Rule 26(a) and 26(e). *Id*. at 11. Plaintiff points out that those disclosures occurred after Plaintiff was repeatedly told no such identities existed, and Plaintiff was never offered deposition dates for those newly discovered witnesses. Plaintiff contends this is "textbook prejudice." *Id*. at 12.

Defendant responds that neither Chief Security Officer Pappas nor Officer Garuccio is an employee of Defendant. ECF No. [63] at 6. Defendant points out that Plaintiff was provided with Chief Security Officer Pappas' Incident Report and is just as aware of the facts and information known by Pappas and Garuccio as is Defendant. Moreover, Defendant contends it also hoped to obtain the testimony of the officers, but ultimately argues Plaintiff had an equal opportunity to coordinate depositions but chose not to. *Id*. at 6-7. Defendant further argues that even if disclosure of the officers was untimely, such a disclosure is harmless to Plaintiff because she is in possession of all relevant policies and procedures, and is just as aware as Defendant of the witnesses' known facts and information. *Id*. at 8.

Regarding the January 15, 2026 disclosure, Defendant points out those disclosures were made before the February 3, 2026 discovery deadline and were provided as Defendant continued its investigation and developed its theories of defense. Defendant argues that Plaintiff's allegations

16

center around the alleged inadequate security and overservice of alcohol aboard the *MSC Seascape*, and the knowledge of the Vessel's Staff Captain, Hotel Director, and Food and Beverage Manager regarding onboard policies and procedures could assist both Parties' claims and defenses. *Id*. at 11. Defendant argues that admitting the testimony of those witnesses does not substantially harm Plaintiff and their testimony should not be stricken. *Id*.

Federal Rule of Civil Procedure 26(a)(1)(A)(i) requires parties to provide to the other parties "the name ... of each individual likely to have discoverable information ... that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Rule 26(e), regarding supplementing disclosures and responses, states in pertinent part that: "A party who has made a disclosure under Rule 26(a) ... must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e).

Federal Rule of Civil Procedure 37(c) "provides the consequences for a party's failure to disclose, pursuant to the requirements of Rule 26." *Nance v. Ricoh Elecs, Inc.*, 381 Fed. Appx. 919, 922 (11th Cir. 2010). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Id.* (citing FED. R. CIV. P. 37(c)(1)); *Cooley v. Great S. Wood Preserving*, 138 Fed.Appx. 149, 161 (11th Cir. 2005) (same). Because, under Rule 26(e)(1)(A), supplementation of incorrect responses is required, "the obligation to disclose pertinent parties is continuing

[throughout the case]." *F.T.C. v. Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d 1167, 1179 (N.D. Ga. 2008).

"Finally, the non-disclosing party bears the burden of showing that the failure to comply with Rule 26 was substantially justified or harmless." *Frierson v. Atlanta Indep. Sch. Sys.*, 22 F. Supp. 3d 1264, 1283-84 (N.D. Ga. 2014) (citing *Mitchell v. Ford Motor Co.*, 318 Fed. Appx. 821, 824 (11th Cir. 2009)). "Substantial justification requires justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request. The proponent's position must have a reasonable basis in law and fact. The test is satisfied if there is [a] genuine dispute concerning compliance." *Home Design Services, Inc. v. Hibiscus Homes of Florida, Inc.*, No. 603CV1860ORL19KRS, 2005 WL 2465020, at *2 (M.D. Fla. Oct. 6, 2005) (quoting *Ellison v. Windt*, No. 6:99-cv-1268-Orl-KRS, 2001 WL 118617, at *2 (M.D. Fla. Jan. 24, 2001)) (citation omitted). A district court has "broad discretion to fashion appropriate sanctions for violations of discovery orders." *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993).

Here, sanctions under Rule 37(c) are inappropriate because Defendant timely disclosed all witnesses. Plaintiff argues that though the disclosures were provided prior to the close of discovery, the timing did not allow Plaintiff a meaningful opportunity to depose the witnesses. However, Plaintiff never sought to extend the discovery deadlines to conduct further depositions. Moreover, Defendant has shown that neither officer is an employee of Defendant, and Plaintiff could have equally subpoenaed the witnesses for deposition. Because the Court finds Defendant timely disclosed the witnesses, it need not address whether the disclosures were substantially justified or harmless. Plaintiff's Motion is denied.

### C. Defendant's Motion to Strike Expert Testimony

Defendant seeks to strike the proposed testimony of Plaintiff's expert, Ronald J. Thomason ("Thomason"). Thomason is a certified instructor in Maritime Security. ECF No. [64-6] at 3. Thomason has "[o]ver 25 years of experience in providing security assessment, planning, and training services to commercial maritime industry, government, and law enforcement personnel responsible for oversight and enforcement of regulatory compliance of security standards and practices." *Id*. at 1.

In preparing his report, Thomason reviewed the CVSSA, the International Ship and Port Facility Security (ISPS) Code, as well as various case documents. *Id*. at 6. First, Thomason opines that Defendant did not have enough security staff dedicated to provide a presence for deterrence and appropriate response at the "White Party". ECF No. [64-6] at 10. Second, Thomason opines that Defendant did not comply with the requirements of the CVSSA. *Id*. at 13. Third, Thomason opines that the Plaintiffs acted reasonably in response to a foreseeable and preventable unprovoked attack. *Id*. at 15. Fourth, Thomason opines that Defendant failed to follow its own published policy, and the "White Party" bar staff failed to follow the established procedures for identifying inebriated guests, terminating their consumption of alcohol, and notifying security of their possible threat to the safety and enjoyment of other event attendees. *Id*. at 16. Fifth, Thomason opines that had Defendant complied with the requirements of the CVSSA, this incident could have been detected and deterred before escalating into a physical assault.

Defendant seeks to exclude Thomason's expert opinions because his methodology is not reliable, and his testimony would not be helpful. ECF No. [64] at 4. Defendant contends Thomason's reasoning and methodology are inapplicable to the facts at issue. Specifically, Defendant argues that Thomason's proposed testimony that Plaintiff was the "victim of physical assaults by other shipboard passengers" and that the alleged incident was a "foreseeable and

19

preventable unprovoked physical attack" in which Defendant failed "to follow the established procedures for identifying inebriated guests and notifying security" runs contrary to Plaintiff's testimony that (1) she voluntarily asserted herself into the physical altercation; (2) that there was no evidence of prior verbal or physical altercations among the alleged assailants and victim; (3) that there was no expectation a fight would break out; and (4) that the only evidence of intoxication were the Aden Family's rudeness, volume, and redness. *Id*. at 6.

Defendant further argues Thomason's reasoning and methodology improperly rely on inapplicable legal authorities such as the CVSSA and the ISPS Code. *Id*. at 7. In support, Defendant cites the rebuttal report of Corey D. Ranslem ("Ranslem") who explains that the primary purpose of the CVSSA was to "address rape and sexual assault", while the ISPS was created to put security procedures in place to prevent acts of terrorism. ECF No. [64-7] at 2. Defendant argues that because there is no connection between the CVSSA, ISPS Code, and Plaintiff's injuries, Thomason's testimony should be stricken. Defendant further argues that Thomason's proposed testimony is not helpful to a trier of fact because he seeks to offer opinions or testimony that constitute ultimate legal conclusions that improperly invade the province of the jury. *Id*. at 9.

Plaintiff responds that Defendant's arguments go to weight, and not admissibility. ECF No. [85] at 5. Plaintiff contends that Thomason's conclusions incorporate the totality of the circumstances beyond isolated deposition statements. For example, Defendant points out that though Plaintiff approached the altercation voluntarily, that fact does not negate Defendant's duty to prevent escalating situations. Plaintiff avers that the absence of prior altercations at the event does not preclude foreseeability where other warning signs were present. *Id*. at 6. Plaintiff further responds that while the CVSS and ISPS Code may not directly govern "passenger-on-passenger altercations", they establish industry standards for passenger safety and security protocols that are

relevant to evaluating Defendant's overall security practices. *Id*. at 8. Plaintiff argues that whether those internationally recognized security frameworks inform the applicable standard of care is a question for the jury. *Id*. at 7. Plaintiff contends that Thomason does not offer improper legal conclusions as he does not define maritime negligence, but instead offers his expert opinion as to security staffing adequacy, alcohol monitoring protocols, crowd control procedures, compliance with vessel policies, and industry-standard incident detection practices. *Id*. at 11.

As the Court previously stated, to determine whether expert testimony or any report prepared by an expert may be admitted, the Court engages in a three-part inquiry, which includes whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)).

### i.   Qualifications

Defendant does not challenge Thomason's qualifications. *See generally* ECF No. [64].

### ii.   Methodology and Helpfulness

An expert satisfies the reliability prong of the *Daubert* standard when the methodology by which the expert reaches conclusions is sufficiently reliable as determined through consideration of several non-exclusive factors, primarily:

> (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the theory or technique used by the expert has been subjected to peer review and publication; (3) whether there is a known or potential error rate of the methodology; and (4) whether the technique has been generally accepted in the relevant scientific community.

*Chapman v. Procter & Gamble Distrib.*, LLC, 766 F.3d 1296, 1305 (11th Cir. 2014) (quoting *United Fire & Cas. Co. v. Whirlpool Corp.*, 704 F.3d 1338, 1341 (11th Cir. 2013). "The same criteria that are used to assess the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific, experience-based testimony." *United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004) (quoting *Kumho Tire v. Carmichael*, 526 U.S. 137 at 152 (1999)).

Helpfulness turns on whether the proffered testimony "concern[s] matters that are beyond the understanding of the average lay person." *Edwards v. Shanley*, 580 F. App'x 816, 823 (11th Cir. 2014). Moreover, an expert witness may testify as to his opinion an ultimate issue of fact, but he "may not testify as to his opinion regarding ultimate legal conclusions. *Umana-Fowler v. NCL (Bahamas) Ltd.*, 49 F. Supp. 3d 1120, 1122 (S.D. Fla. 2014) (citing *United States v. Delatorre*, 308 Fed. Appx. 380, 383 (11th Cir. 2009)).

The Court addresses each of Thomason's opinions in turn. First, Thomason opines that based on his years of training, education, and experience Defendant did not have enough security staff present for deterrence. ECF No. [64-6] at 9-10. Thomason states that because the "White Party" was held in a space that encompassed three decks, he would expect there to be a security officer on each deck. He further explains that Defendant's Cruise Management – Security Personnel Employment Agreement does not specify the duties of the security personnel nor was he able to review excerpts of Defendant's Ship Security Plan ("SSP"). He indicated the SSP would have made apparent the assignment of security tasks and responsibilities. Thomason further opines that an SSP is required under the ISPS Code. Moreover, Thomason asserts that Section 4.5 of the ISPS Code establishes responsibilities for ship security officers ("SSOs"), and that Section 4.15.14 delegates responsibility for ensuring that Defendant's personnel operate in accordance with the approved SSP at all times.

He opines that all of Defendant's security staff are required to be trained in the CVSSA, which provides specific instruction on the detection, prevention, evidence collection, and reporting of specific criminal threats. As such, Thomason contends that it appears that the ship staff working at the "White Party" were insufficiently trained in how to detect the presence of intoxicated guests, and failed to respond appropriately to deter the bar fight. Thomason opines that he would have expected Defendant to place three security officers at the "White Party" augmented by recurring two-man patrols to enhance the security staff's ability to detect and de-escalate inappropriate behaviors.

The Court finds Thomason's opinion improperly relies upon regulations that are inapplicable based on the facts of this case. First, the ISPS Code, created in the aftermath of the events of September 11, 2001, provides no guidance as to how to prevent the harm alleged in this case. Specifically, the ISPS Code is silent as to anything which would dictate the security response to a sudden punch in a bar fight. Ultimately, Thomason did not review Defendant's SSP and was "unable to determine the specific responsibilities of the shipboard security personnel." ECF No. [64-6] at 11.  Moreover, the CVSSA is not implicated, nor is it relevant, because the incident does not involve a homicide, kidnapping, sexual assault, suspicious death, theft of money over $10,000, or a physical assault with serious bodily injury.

As to Thomason's suggestion that more security would have prevented the altercation, Thomason does not explain how additional security would have prevented the sudden punch in this case. To the contrary, the CCTV camera shows at least two employees in the vicinity of Plaintiff and her assailant at the time of the punch. ECF No. [60-8]. The employees immediately separate Plaintiff and the Aden family member after the sudden punch is thrown. *Id*. Thomason merely relies on his experience to assert that a different, hypothetical security plan would have

prevented the fight. Thomason's assertion is entirely speculative. *See Arevalo v. Mentor Worldwide LLC,* No. 21-11768, 2022 WL 16753646, at *3 (11th Cir. Nov. 8, 2022) ("There can't be too great an analytical gap between the data and the expert's opinion, and the expert cannot bridge this gap with mere *ipse dixit*.").

"[I]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (citing Fed. R. Evid. 702). In this instance, allowing such testimony would subsume the reliability prong of the *Daubert* analysis into the qualifications prong.  Moreover, Thomason's first opinion pivots from security measures to the suggestion that the ship staff was improperly trained on how to detect intoxicated guests. Thomason provides no support for this assertion either in his experience or an applicable regulation.

Thomason's second opinion is that Defendant failed to comply with the requirements of the CVSSA. ECF No. [64-6] at 13. Specifically, Thomason opines that Defendant did not include this incident as "reportable", indicating a lack of training for effective execution of the reporting requirement. As the Court previously determined, the CVSSA is not implicated because the incident does not involve a homicide, kidnapping, sexual assault, suspicious death, theft of money over $10,000, or a physical assault with serious bodily injury.

Thomason's third opinion is that, based on his experience, Plaintiff acted reasonably in response to a foreseeable and preventable unprovoked physical attack. *Id*. at 15. Thomason's opinion relies only on his experience. His opinion does not explain how his experience led to that conclusion, why his experience is a sufficient basis for the "reasonable" actions of the Plaintiff or

24

the "foreseeability" of the assault. Moreover, Thomason references the CCTV footage but only discusses the footage as it relates to the now dismissed Plaintiff Garcia. Thomason does not address the footage as it relates to Plaintiff Vieira. Moreover, Thomason may not opine as to whether the bar fight was "foreseeable", as foreseeability is a legal conclusion required to prove causation in a maritime general negligence case. "To prove causation, a plaintiff must establish 'a cause-and-effect relationship ... between the alleged tortious conduct and the injury'—that is, cause in fact (or 'actual' or 'but-for causation')—as well as the 'foreseeab[ility]' of the 'conduct in question' producing the alleged harm—i.e., 'proximate causation.'" *Bell v. Beyel Bros., Inc.*, No. 2:16-CV-14461, 2017 WL 1337267, at *3 (S.D. Fla. Apr. 7, 2017) (quoting *Smith v. United States*, 497 F.2d 500, 506 (5th Cir. 1974)).

Thomason's fourth opinion argues Defendant failed to follow its own published policy. Thomason reviewed Defendant's website and its published Alcohol Service Standards. ECF No. [64-6] at 15-16. Thomason explains that Defendant's website states that the company and its ships do not tolerate behaviors that affect the comfort, health, safety, and security of other guests or crew members. Thomason then explains that Defendant's published Alcohol Service Standards address the costs of not serving alcohol responsibly, laws on serving intoxicated guests, risks of excessive consumption, and dealing with intoxicated guests and terminating alcoholic beverage service. Thomason concludes that "despite the instruction provided in this published policy, the White Party bar staff failed to follow the established procedures for identifying inebriated guests. . .." Within Thomason's Fourth opinion, he also opines that Defendant's published guidance states that serious offenders of the ship's safety and security policies may be detained. *Id*. at 16. He notes that no member of the Aden family was detained but was allowed to continue to move unescorted about the ship for at least two days. Thomason argues this lack of "due diligence" to the application of

25

normal and reasonable security practices "breached the standard of care for providing adequate and appropriate security for the ship's passengers and crew." *Id*.

Thomason fails to articulate what these established procedures are, how the bar staff failed to follow them, or how the unreferenced procedures would have prevented the sudden punch thrown at Plaintiff. Moreover, Thomason fails to explain how Defendant's decision not to detain the Aden family after the incident has any bearing on security measures which would have prevented a sudden punch at the bar. Those opinions are entirely speculative, and it is Plaintiff's burden to show the methodology by which her expert reached his conclusions is sufficiently reliable. *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002).

Fifth, Thomason opines that had Defendant complied with the CVSSA and Defendant's published policies for dealing with the intoxicated guests, this incident would have been detected and deterred prior to ever escalating into a fight. *Id*. at 17. However, this summation of Thomason's prior opinions is entirely speculative and not rooted in a methodology that relies on anything other than his experience. The CVSSA is not applicable in this case. Moreover, Thomason has offered no explanation of which policies were violated, how they were violated, and how a particular policy, if followed, would prevent a sudden punch at the bar.

The Court finds Thomason's analysis lacks a reliable methodology and would not be helpful. Defendant's Motion is granted.

### D. Defendant's Motion for Summary Judgment

Defendant argues it is entitled to summary judgment on all Counts because Plaintiff's own testimony establishes the alleged physical altercation was not foreseeable. ECF No. [65] at 6. In support, Defendant cites *Fuentes v. Classica Cruise Operator Ltd, Inc.*, 32 F.4th 1311 (11th Cir. 2022), in which the Eleventh Circuit determined that "[i]n the context of passenger-on-passenger violence, a cruise line has a duty to warn and/or protect when it or its employees reasonably

apprehend the danger such that the attack was foreseeable." 32 F.4th at 1317. In *Fuentes*, a plaintiff and his wife were passengers on a two-night cruise aboard the *Grand Classica*. One evening while they were playing foosball with another passenger, Clynt Hadley, intentionally bumped the foosball table and made a comment directed at plaintiff's wife. The next morning during disembarkation, Hadley attempted to cut in front of plaintiff in line. Plaintiff told Hadley he should go to the back of the line which led to a verbal altercation. A security officer then stood in between the two parties, but Hadley punched plaintiff in the face and charged him. *Id.* at 1316.

The Eleventh Circuit explained that because a cruise line is not an insurer of its passengers' safety, the foreseeability determination must have some connection to the events that gave rise to the negligence claim. *Id.* at 1318. The Eleventh Circuit found that there was no evidence to suggest the defendant had reason to believe the assailant posed a specific danger to the plaintiff or any other passenger, particularly considering plaintiff's testimony that he was "blind-sided" by the punch and the attack was a "spur of the moment type of thing." *Id.* at 1319.

Defendant also cites *J.F. by & through S.F. v. Carnival Corp.*, 141 F.4th 1164 (11th Cir. 2025), in which the Eleventh Circuit rejected a plaintiff's argument that because sexual assaults occurred in the past, defendant was on notice that sexual assaults occur on its vessels with some regularity. 141 F.4th at 1171. In *J.F.*, the minor plaintiff met three teen boys. One evening, plaintiff and the three boys went to get pizza. Upon realizing it was nearly 1:00 a.m., plaintiff indicated she needed to check in with her parents. The boys offered to walk her back, but one of the boys asked to swing by his room to get his charger first. The group did not encounter any security officers along the way. Of the ship's 20 total officers, only seven were working the night shift. When the group made it to the boy's room, the three teen boys sexually assaulted plaintiff. *Id.* at 1167. The Eleventh Circuit reasoned that plaintiff's argument lacked a connection to the events that gave rise

to her negligence claim and was akin to saying that the cruise line was on notice to every puddle everywhere on one of its ships. *Id.* at 1171.

Defendant also contends it is entitled to summary judgment because it has not breached its duty of care or proximately caused Plaintiff's injuries. ECF No. [65] at 17. Defendant contends that "independent illegal acts of third persons are [generally] deemed unforeseeable and therefore the sole proximate cause of the injury, which excludes the negligence of another as a cause of injury." *Id.* (quoting *J.F. by & through S.F. v. Carnival Corp.*, 141 F.4th 1164, 1173 (11th Cir. 2025)). Defendant also cites *Salazar v. Norwegian Cruise Line Holdings, Ltd.*, 188 F. Supp. 3d 1312 (S.D. Fla. 2016), which holds that, "'maritime law does not support a stand-alone claim based on' a cruise line's alleged duty to take actions to reduce or eliminate foreseeable risks before they manifest, where such claim is 'unconnected to [the passenger's] specific accident.'" 188 F.Supp. 3d at 1319 (quoting *Weiner v. Carnival Cruise Lines*, No. 11-CV-22516, 2012 WL 5199604, at *4 (S.D. Fla. Oct. 22, 2012)).

Plaintiff responds that Defendant had notice that there was a hazard, ECF No. [84] at 7, and points out that, in the five years prior to the altercations, Defendant's ships had two hundred and nineteen incidents of physical altercations in venues that served alcohol. *Id.* (citing ECF No. [83] ¶¶ 66-68. Plaintiff argues this case is analogous to *K.T. v. Royal Caribbean Cruises*, Ltd., 931 F.3d 1041 (11th Cir. 2019), in which the Eleventh Circuit found plaintiff to have sufficiently pled duty of care, for purposes of surviving a motion to dismiss, where the complaint sufficiently alleged defendant's crew members did nothing to prevent a large group of men from supplying plaintiff with alcohol and leading her away to a private cabin where she was brutalized and gang raped. 931 F.3d at 1045. Plaintiff further responds that Defendant breached its duty of care by continuing to overserve alcohol to the Aden Family. ECF No. [84] at 8. Plaintiff contends that "the

intoxicated passenger's behavior is relevant to the determination that Defendant in this case was on notice of the danger." *Id.* at 9 (quoting *Doe v. NCL (Bahamas) Ltd.*, No. 11-22230-CIV, 2012 WL 5512347, at *6 (S.D. Fla. Nov. 14, 2012).

As to foreseeability, Plaintiff argues it was foreseeable that, because Defendant did nothing to stop the attack, Plaintiff would ultimately intervene, and there are multiple disputed material facts that preclude summary judgment on the issue of foreseeability but does not offer any citations to the record. Plaintiff contends the question of foreseeability is for the jury. *Id.* at 26.

As stated, Plaintiff asserts three claims: general negligence (Count I); negligent failure to warn (Count V), and premises liability (Count IX). *See generally* ECF No. [5]. The Court addresses each claim in turn.

### i.   Count I – General Negligence

"In analyzing a maritime tort case, [courts] rely on general principles of negligence law." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (quoting *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980)). "To prevail on a negligence claim, a plaintiff must show that '(1) the defendant had a duty to protect the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm.'" Guevara, 920 F.3d at 720 (quoting *Chaparro*, 693 F.3d at 1336). "Each element is essential to Plaintiff's negligence claim and Plaintiff cannot rest on the allegations of her complaint in making a sufficient showing on each element for the purposes of defeating summary judgment." *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1236-37 (S.D. Fla. 2006).

"A cruise-ship operator 'is not liable to passengers as an insurer, but only for its negligence.' The mere fact of an accident-causing injury is insufficient to establish that a dangerous condition existed." *D'Antonio v. Royal Caribbean Cruise Line, Ltd.*, 785 F. App'x

794, 796-97 (11th Cir. 2019) (quoting *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11ᵗʰ Cir. 1989)); *see also Brown v. Carnival Corp.*, 202 F. Supp. 3d 1332, 1338 (S.D. Fla. 2016) ("Generally, ship owners and operators do not owe a heightened or special duty of care to their passengers." (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630, 79 S. Ct. 406, 3 L.Ed.2d 550 (1959)), *aff'd*, 679 F. App'x 981 (11th Cir. 2017). Rather, "under maritime law, the owner of a ship in navigable waters owes passengers a duty of reasonable care under the circumstances." *Sorrels v. NCL (Bah.) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015).

To establish the owner of a ship in navigable waters breached its duty of care under a theory of direct liability, a plaintiff must show: "(1) a dangerous condition existed; (2) the vessel's operator had actual notice of the dangerous condition; or (3) if there was no actual notice, that defendant had constructive notice of the dangerous condition for an interval of time sufficient to allow the vessel's operator to implement corrective measures." *Stewart v. Carnival Corp.*, 365 F. Supp. 3d 1272, 1275 (S.D. Fla. 2019) (quoting *Reinhardt v. Royal Caribbean Cruises, Ltd.*, No. 1:12-cv-22105, 2013 WL 11261341, at *4 (S.D. Fla. Apr. 2, 2013)).

As is relevant in this case, for purposes of establishing causation, "independent illegal acts of third persons are [generally] deemed unforeseeable and therefore the sole proximate cause of the injury, which excludes the negligence of another as a cause of injury." *J.F.*, 141 F.4th at 1173. Here, Plaintiff argues it was foreseeable that an alcohol-fueled party would lead to an altercation. However, Plaintiff's own testimony contradicts that the altercation was foreseeable. Plaintiff testified that she never felt unsafe or that there was tension in the air. ECF No. [65-1] at 40. Plaintiff testified the only basis under which she would have expected Defendant to know a fight would break out was because:

> Just by the way they were acting and the way that---They were different.  It could
> be their culture, but when I go somewhere I'm civilized.  No matter if you're having

a good time, if you're drinking---You can see that they were drunk. Their faces were already red.

ECF No. [65-1] at 40. Plaintiff also testified that she knew the Aden Family was drunk because they were "extremely loud". *Id*. at 50.  Plaintiff contends that because Defendant's ships had 219 prior incidents of physical altercations in venues that served alcohol, the third-party assault was foreseeable.

Similar to *Fuentes*, the Court finds that Plaintiff's reliance on those incidents is at too high a level of generality and ignores too many variables. Of the alleged similar incidents, only one assault occurred in the same Seascape bar at issue in this case. ECF No. [83] ¶ 68.  Plaintiff identifies only one prior assault at a "White Party" which occurred aboard a different ship, the *MSC Lirica*, and concerned a passenger pushing a table into the back of another passenger during an argument.  ECF No. [91] ¶ 68. In *Fuentes*, the Court explained:

> Cruise ships carry hundreds (and sometimes thousands) of passengers on each voyage, and those persons physically congregate and interact with each other in countless numbers of ways during the trip (at dinner, at poolside, at shows, at the bar, at the casino, at the shops, at excursions, at the nightclub, etc.). Because a cruise line is not "an insurer" of its passengers' safety, *see Keefe*, 867 at 1322, the foreseeability determination must have some connection to the events that gave rise to the negligence claim. After all, a cruise line's duty is to protect its passengers "from a particular injury." *Chaparro*, 693 F.3d at 1336 (emphasis added).

32 F.4th at 1318. The Eleventh Circuit further explained that "[t]he most important aspect of the summary judgment record, in our view, is that there is not a single documented violent altercation between passengers during disembarkation aboard the *Grand Classica* or any of Classica's other cruise ships." *Fuentes*, 32 F.4th at 1319.

Plaintiff's reliance on *K.T.* is also misplaced as that case addressed a motion to dismiss rather than the summary judgment standard. *K.T.* only held that Plaintiff's complaint alleged sufficient facts to support the causes of action, consistent with the complaint's allegations that the

cruise line had "*actual knowledge* of minors wrongfully being provided with or allowed access to alcohol, and then becoming the victim of assaults and batteries and sexual crimes." 931 F.3d at 1043 (emphasis added).

Here, there is no record evidence that Defendant had prior knowledge of a punch being thrown until the punch was actually thrown. Therefore, the lack of foreseeability defeats the causation element of Plaintiff's general negligence claim. "When the record is devoid of evidence to suggest reasonable foreseeability of a specific attack, the Court should grant summary judgment on both the duty and causation elements of a plaintiff's negligence claim." *J.F. v. Carnival Corp.*, 710 F. Supp. 3d 1176, 1184 (S.D. Fla. 2023), aff'd sub nom. J.*F. by & through S.F. v. Carnival Corp.*, 141 F.4th 1164 (11th Cir. 2025). As such, Defendant is entitled to summary judgment on Count I.

### ii.   Count V – Negligent Failure to Warn

Similarly, the Eleventh Circuit has held that "[l]iability [under maritime law] for a failure to warn. . . arises from foreseeability, or the knowledge that particular conduct will create danger." Fuentes, 32 F.4th 1317 (11th Cir. 2022) (quoting *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980). Put another way, "[a] Defendant's failure to warn the plaintiff does not breach that duty, however, unless the resultant harm is reasonably foreseeable." *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980).  Because the Court has already determined the assault was not foreseeable, Defendant is entitled to summary judgment as to Count V.

### iii.   Count IX – Premises Liability

Plaintiff's premises liability claim is based on a theory of direct liability that Defendant owed Plaintiff a duty of reasonable care and had a duty to warn her of concealed dangers. ECF No. [5] ¶ 203. Plaintiff further alleges Defendant had a duty to provide reasonable security and/or implement reasonable security measures aboard the ship at all locations. *Id*. ¶ 206. Plaintiff claims

that as a direct and proximate result of Defendant's actions and inactions, Plaintiff suffered bodily injury. *Id*. ¶ 213. As previously stated, "[t]o prevail on a negligence claim, a plaintiff must show that '(1) the defendant had a duty to protect the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm.'" *Guevara*, 920 F.3d at 720 (quoting *Chaparro*, 693 F.3d at 1336). The Court has previously found that the attack on Plaintiff was not foreseeable and therefore, Plaintiff is unable to prevail as to causation. Moreover, the Court cannot accept Plaintiff's argument that hypothetical additional security would have prevented the assault. Such an argument is too speculative. *See J.F.*, 141 F.4th at 1173. As such, Defendant is entitled to summary judgment as to Count IX.

## V.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Plaintiff's Motion to Strike and Preclude Defendant's Witnesses from Testifying at Trial and Offering Evidence Through Affidavit or Declaration in Any Pre-Trial Motion, **ECF No. [59]**, is **DENIED.**

2.  Plaintiff's Motion for Spoliation Sanctions and Negative Inference Instructions, **ECF No. [60]**, is **DENIED.**

3.  Defendant's *Daubert* Motion to Strike Expert Testimony, **ECF No. [64]**, is **GRANTED.**

4.  Defendant's Motion for Summary Judgment, **ECF No. [65]**, is **GRANTED.**

5.  Judgment shall be entered in favor of Defendant. To the extent not otherwise disposed of, any scheduled hearings, court appearances, and trial are **CANCELED**, all pending motions are denied as **MOOT** and all deadlines are **TERMINATED**.

Case No. 24-cv-24991-BLOOM/Elfenbein

6.  The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 14, 2026.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:

counsel of record

34